**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MICHIGAN**

KATHERINE HOFF,

Plaintiff,

v.

STRYKER CORPORATION
d/b/a STRYKER,

Defendant.

Case No.

Hon.

---

NICHOLE OMILION (P86380)
JONATHAN R. MARKO (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
nichole@markolaw.com

---

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

    NOW COMES the above-named Plaintiff, KATHERINE HOFF, by and through her attorneys, MARKO LAW, PLLC, and for her Complaint against the above-named Defendant, states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff Katherine Hoff is a female residing in Kalamazoo, Michigan.

2. Plaintiff is informed, believes, and thereupon alleges, that Defendant Stryker Corporation d/b/a Stryker was at all times relevant herein licensed, organized, and/or existing under the

laws of the State of Michigan, and regularly conducts business in the State of Michigan, with offices located in Portage, Michigan.

3. The amount in controversy exceeds this Court's jurisdictional limit, not including costs, interests, and attorneys' fees.

4. Venue is proper as Defendant regularly conducts business in this district and the events and omissions giving rise to the claims herein occurred in this district.

<u>**STATEMENT OF FACTS**</u>

5. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

6. On or about April 8, 2019, Plaintiff Katherine Hoff ("Ms. Hoff") began her employment with Defendant Stryker Corporation ("Stryker") as a Marketing Specialist making approximately $75,000.

7. In August 2021, Ms. Hoff transitioned to the role of Lead Meeting and Event Specialist within Stryker's Medical Division, located in Kalamazoo, Michigan.

8. Ms. Hoff was employed full-time at an annual compensation package of approximately $100,000, working 40 hours per week.

9. Prior to her injury, Ms. Hoff had no disability on file with Stryker and was regarded as a top-tier, high-performing employee. During her most recent annual performance review, conducted while she was on medical leave in late February of 2023, Ms. Hoff received the most prestigious performance evaluation of "Distinguished Performance," which very few employees receive. Ms. Hoff also received the maximum percentage for her annual merit increase.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

JM MARKO LAW

10. In January 2023, Ms. Hoff was experiencing a flare-up of her pre-existing gastrointestinal condition. On January 27, 2023, she visited the Bronson ER in Paw Paw, Michigan, due to rectal pain and was evaluated and cleared to safely travel for an upcoming work trip.

11. On January 29, 2023, Ms. Hoff traveled with a co-worker from Detroit Metropolitan Airport to Puerto Vallarta, Mexico, for a Stryker business site-visit meeting for an upcoming event as part of her role as Lead Meeting and Event Specialist, as she was responsible for leading all planning efforts for the divisions' 2023 incentive trips.

12. On January 31, 2023, after morning meetings with venue representatives, Ms. Hoff returned to her guest room and started spontaneously hemorrhaging large blood clots. She called the hotel immediately to send an ambulance, exited her hotel room, and lost consciousness, suffering a head injury upon falling.

13. Ms. Hoff was transported by ambulance to Punta Mita Hospital in Mexico, where she received intermittent care. She was only able to grab her current medications, wallet and passport before losing consciousness and ending up in the ambulance. None of Ms. Hoff's emergency contacts were notified by Stryker. Ms. Hoff was denied food and water and was subjected to unsanitary hospital conditions, language barriers, and repeated payment demands.

14. Ms. Hoff had critically low hemoglobin lab values and was diagnosed with a bowel abscess (perianal abscess) that required immediate medical intervention.

15. Although Ms. Hoff was offered the option of a medical airlift via helicopter connection by the Vice President of Sales, Matt Vanderwende, Stryker refused to coordinate this option, stating it was not "protocol," thereby delaying Ms. Hoff's evacuation for approximately three days.

16. Stryker did not allow Ms. Hoff the choice of what hospital she was transported to for treatment, and Stryker chose to ultimately transport Ms. Hoff by medical airlift to Spectrum Hospital in Grand Rapids, Michigan, where she was admitted from approximately February 2, 2023, through February 20, 2023.

17. On February 12, 2023, Ms. Hoff was diagnosed with Crohn's disease. Due to the prolonged delay in adequate care in addition to the newly acquired diagnosis that having an ileostomy placed was required for survival.

18. On February 13, 2023, Ms. Hoff underwent ileostomy surgery at Spectrum Hospital, resulting in the placement of a life altering ileostomy bag. While the hope was that the ileostomy bag was temporary, the damage was too severe. After three years of continued efforts to find a solution, Ms. Hoff would have permanent placement of the ileostomy bag leaving her permanently disfigured and permanently disabled.

19. On March 8, 2023, Ms. Hoff lost consciousness at home due to malnutrition and dehydration and suffered a serious fall resulting from her injuries, and broke her jaw in two places and displacing, chipping, and breaking multiple teeth, which placed her on an all-liquid diet and severely restricted her ability to speak.

20. Ms. Hoff was also diagnosed with depression and anxiety as a result of the trauma she experienced in Mexico and its aftermath. She was had to seek treatment, be prescribed new medications, and continued therapy to manage her PTSD diagnosis and severe depression that resulted from the accident and how she was subsequently treated.

21. Ms. Hoff took short-term disability leave and FMLA leave from approximately February 2, 2023, through July 31, 2023, all of which was approved and encouraged by Stryker. Ms.

Hoff's supervisor encouraged the amount of time she took off as employees at the company get 100% pay for up to 6 months of short-term disability leave.

22. During her medical leave, Ms. Hoff received her annual performance review. She was given the maximum percentage merit increase and the highest performance rating available to employees at Stryker. She was assured her runway was long and there were big things planned for her future career within the organization.

23. In or around July 2023, in anticipation of her return to work, Ms. Hoff submitted return-to-work paperwork requesting the following reasonable accommodations for her permanent disability: (a) no lifting over 20lbs for the first three months back as she rebuilt her strength; (b) the ability to work from home as needed to manage medical flare-ups; (c) an office with a door; (d) frequent bathroom breaks; (e) a flexible schedule for medical appointments; and (f) no more than 90 minutes of talking per day for the first three months back at work, due to her broken jaw recovery.

24. These accommodations were crafted in partnership with Ms. Hoff's colorectal surgeon in an effort to provide a safe and healthy return to work while still allowing her to perform all of her job duties at the same high caliber as before her leave.

25. On July 31, 2023, Stryker advised Ms. Hoff she would be unable to return to work on August 1, 2023, as previously discussed, as her accommodation requests needed further review and additional information from her doctor.

26. Due to the prolonged delay in determining whether Ms. Hoff could return with the requested accommodations, she was forced to go on long-term disability, which the company was aware of.

27. On August 18, 2023, Stryker, through its agents, blanketly denied all of Ms. Hoff's accommodation requests without engaging in a good-faith interactive process to identify reasonable accommodations.

28. The two accommodations that Stryker referenced in its letter to Ms. Hoff, the short-term 20lb lifting restriction and the ability to work from home when she experienced medical flare ups, were unable to be reasonably accommodated. However, Stryker failed to consider the other four requested accommodations and failed to recognize that Ms. Hoff was already a hybrid employee and did not request to work from home full-time.

29. During the August 18, 2023, call, Stryker's representative stated that the company would have let Ms. Hoff return to work if she did not have restrictions.

30. In its written denial, Stryker mischaracterized Ms. Hoff's request for temporary work-from-home as a request to permanently transition to a fully remote role, when in fact her request was limited to periods of acute flare-ups.

31. While Ms. Hoff's medical condition was listed as permanent because Crohn's Disease is an incurable autoimmune disease, Ms. Hoff's actual request was for limited periods of remote work when the flare-ups occurred to allow her to work without having to take time off.

32. Stryker failed to have a reasonable conversation with Ms. Hoff to understand the basis of her requests or to explore whether the company could reasonably accommodate them.

33. After denying all of her accommodation requests, Stryker informed Ms. Hoff that she had 30 days to identify, apply, interview, and ultimately be selected for another position within the company or face termination.

34. In order to preserve her employment, as she loved her job and was eager to get back and work hard for the company, Ms. Hoff rescinded her accommodation requests and submitted new paperwork from her healthcare providers indicating no current restrictions, and returned to work on September 15, 2023, without any accommodations.

35. Upon returning to work, Ms. Hoff's job duties had been reduced from leading, scouting, and executing large-scale, high-touch events to onboarding activities, small-scale events, assisting with employee engagement events, and administrative tasks. While Stryker failed to accommodate Ms. Hoff's requested accommodations, the company chose to lessen her role with no justification.

36. Upon return, one of the first tasks assigned to Ms. Hoff was cleaning out the storage closet, which required lifting heavy prizes, event supplies, décor, and leftover material from past events. Stryker was aware of Ms. Hoff's medical conditions and prior accommodation request but still chose to have her complete this task.

37. That same month, the company had Ms. Hoff present at the monthly town hall, although they were aware of her difficulty speaking for long periods of time as she awaited jaw surgery.

38. In October 2023, Ms. Hoff was required to take an additional leave of absence for reconstructive jaw surgery. This leave was approved by Stryker, and she remained on leave until December 6, 2023.

39. In December 2023, Stryker's Senior Director of Communications told Ms. Hoff she was hurting the office culture because she did not regularly join her coworkers for lunch. This conversation took place while Ms. Hoff was on dietary restrictions due to her permanent

ileostomy. This comment was insensitive and inappropriate as it targeted her disability and the referenced lunches were not team events.

40. On December 21, 2023, Ms. Hoff filed a written formal complaint with Stryker regarding its discriminatory treatment, including failure to promote, harassment, and concerns about being subjected to different terms and conditions of employment due to her disability. Stryker did not take any meaningful steps to investigate this complaint.

41. On January 4, 2024, in connection with her role managing hotel accommodations for Stryker's upcoming National Sales Meeting ("NSM") in Scottsdale, Arizona, Ms. Hoff requested a hotel room with a full-size refrigerator and a microwave so that she could store and prepare her specialized soft and liquid diet, ice packs for her jaw, and medicine that required refrigeration, necessitated by her ileostomy and broken jaw recovery. Ms. Hoff was still on a puree diet and could not eat the food provided for the large-group event.

42. Ms. Hoff's supervisor, Jessica Spero, verbally approved the arrangement, and Stryker subsequently acknowledged in its own position statement that it had given Ms. Hoff permission to make the room arrangement. Ms. Hoff notified her team at a January 8, 2024, team meeting that she had obtained a room with a kitchen area to prepare and store her food and offered the space to any teammates who needed it.

43. On January 10, 2024, Ms. Hoff arrived at the Westin Kierland Resort in Scottsdale, Arizona for the NSM, which was scheduled for two weeks.

44. On January 12, 2024, two days after the NSM began, Ms. Hoff was pulled into a meeting with her supervisor, a Stryker compliance representative, and the company's HR manager, who stated that the room had never been approved and that Ms. Hoff was in an unauthorized room type that she acquired in a "sneaky way," which constituted a policy

violation requiring a formal investigation. Ms. Hoff's supervisor denied giving prior verbal approval.

45. Ms. Hoff was escorted to her room by Stryker management, HR manager, and a member of Stryker's compliance team, and asked to show what she bought on the grocery and supply run the previous day. She was told to inform any individual who asked that she left due to "unforeseen circumstances," and was not giving any direction on what to do, other than immediately leave.

46. Ms. Hoff was sent home from the NSM on a red-eye flight and was thereafter subjected to a multi-week investigation by Stryker for the hotel room she had booked for medical necessity with her supervisor's approval.

47. On January 19, 2024, Stryker placed Ms. Hoff on administrative leave pending the investigation outcome.

48. On January 24, 2024, Stryker deactivated Ms. Hoff's access to all company platforms, including her work email, pay stub portal, and HR portal, without providing prior notice.

49. On January 22, 2024, Stryker's Employee Relations team opened a separate investigation into Ms. Hoff's December 2023 complaint of disability-based discrimination and targeting. Stryker subsequently found no wrongdoing with respect to Ms. Hoff's complaints of discrimination.

50. While on administrative leave, Nate Loehrke emailed Stryker's compliance department regarding the events at issue, and although he had pertinent information, the company refused to interview him. This fact further confirms that the investigation was pretextual.

51. On March 1, 2024, Stryker terminated Ms. Hoff's employment for violation of company policies. The reasons stated were pretextual. Stryker had approved the hotel room arrangement, which was still ultimately the reason for Ms. Hoff's termination.

52. Ms. Hoff was terminated before three significant employment milestones: (a) one month and eight days before her five-year employment anniversary, which would have made her fully vested in her 401(k); (b) before the 2024 merit increases that were distributed to her teammates in the two weeks leading up to her termination; and (c) fifteen days before Stryker's annual 401(k) match date.

53. At all times material herein, Ms. Hoff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, suffering from an ileostomy, Crohn's disease, and related conditions that substantially limit one or more major life activities, including but not limited to digestive function, eating, and physical activity.

54. Stryker was aware of Ms. Hoff's disability at all times following her January 2023 medical emergency and resulting hospitalization.

55. Prior to her termination, Ms. Hoff had filed a written formal complaint with Stryker regarding its discriminatory treatment. Stryker investigated and claimed to have found no wrongdoing.

56. As a result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer extensive damages, including but not limited to the following:

      a. Economic damages including lost wages and loss of future income;

      b. Loss of earning capacity;

      c. Damage to professional reputation;

d. Stress;

e. Humiliation;

f. Embarrassement;

g. Emotional damages;

h. Mental anguish;

i. Non-economic damages;

j. Exemplary damages; and

k. All other injuries to be discovered throughout discovery.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Failure to Accommodate)

57. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

58. The Americans with Disabilities Act ("ADA") requires covered employers to provide reasonable accommodations to qualified individuals with disabilities, unless doing so would cause undue hardship.

59. At all times material herein, Stryker was a covered employer under the ADA, employing more than 20,000 individuals.

60. At all times material herein, Ms. Hoff was a qualified individual with a disability within the meaning of the ADA, in that she suffers from an ileostomy, Crohn's disease, and related conditions arising from her January 2023 medical emergency, which substantially limit one or more major life activities, including but not limited to digestive function, eating, and physical activity.

61. Ms. Hoff notified Stryker of her disability and requested reasonable accommodations, including no lifting over 20lbs. for the first three months upon return, the ability to work from home as needed to manage acute flare-ups, an office with a door, frequent bathroom breaks, a flexible schedule, and a speaking limitation for the first 60 days of her return.

62. Stryker denied all of Ms. Hoff's requested accommodations without engaging in a good-faith interactive process to identify effective accommodations that would enable her to perform the essential functions of her position. Stryker's representative stated that the company would have let Ms. Hoff return to work if she did not have restrictions.

63. In its written denial, Stryker mischaracterized Ms. Hoff's request for infrequent work-from-home when needed to manage acute flare-ups as a request for a permanent remote position and then used that mischaracterization to deny the accommodation entirely, demonstrating that Stryker did not meaningfully consider Ms. Hoff's requests or the basis for them.

64. Following the denial, Stryker informed Ms. Hoff that she had 30 days to identify, apply, interview, and be selected for a different position at the company or she would be terminated.

65. Stryker's failure to provide reasonable accommodations was not the result of any undue hardship, and no legitimate business reason justified the blanket denial of all requested accommodations.

66. Stryker did not take the time to have a meaningful conversation with Ms. Hoff about what accommodation options may have been available, which is a stark contrast in tone from her previous glowing accolades prior to becoming disabled.

67. As a direct and proximate result of Stryker's failure to accommodate Ms. Hoff's disability, Ms. Hoff has suffered and continues to suffer damages including, but not limited to, lost

wages and benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and all other damages to be discovered through the course of litigation.

## COUNT II - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination/Wrongful Termination)

68. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

69. The ADA prohibits covered employers from discriminating against qualified individuals with disabilities in the terms, conditions, and privileges of employment, including termination of employment.

70. At all times material herein, Ms. Hoff was a qualified individual with a disability who was performing her job duties and meeting Stryker's legitimate performance expectations and receiving the maximum merit increase and highest performance rating available to employees.

71. Stryker terminated Ms. Hoff's employment on March 1, 2024, purportedly for violations of the company's policies.

72. The stated reasons for Ms. Hoff's termination were pretextual. Stryker had approved the hotel room arrangement Ms. Hoff made for medical necessity at the NSM, and yet Ms. Hoff was subjected to a six-week investigation and ultimately terminated for acting on that approved accommodation.

73. The true motivation for Ms. Hoff's termination was her disability and Stryker's unwillingness to accommodate and employ a permanently disabled individual, as evidenced by the pattern of discriminatory conduct including the denial of accommodations, the forced rescission of her accommodation requests, the assignment of

the most physical tasks after her return, the reduction in her job duties and responsibilities, and the pretextual termination.

74. Stryker's actions in discriminating against Ms. Hoff and terminating her employment because of her disability were willful, intentional, and/or made in reckless disregard of Ms. Hoff's rights under the ADA.

75. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and all other damages to be discovered through the course of litigation.

## COUNT III - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Retaliation)

76. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

77. The ADA prohibits covered employers from retaliating against employees who engage in activity protected under the Act, including requesting accommodations for a disability, filing internal complaints of discrimination, and filing a charge with the EEOC.

78. Ms. Hoff engaged in protected activity when she requested reasonable accommodations for her disability in July 2023 and filed a written internal complaint with Stryker regarding its discriminatory treatment on December 21, 2023.

79. After Ms. Hoff requested accommodations, Stryker denied her requests, assigned her the most physically demanding tasks, reduced her job duties and responsibilities, manufactured a pretextual basis for termination at the January 2024 NSM, and ultimately terminated her employment on March 1, 2024.

80. A causal connection exists between Ms. Hoff's protected activity and Stryker's adverse employment actions, including but not limited to the close temporal proximity between her accommodation requests and Stryker's retaliatory conduct; the initiation of a compliance investigation within weeks of Ms. Hoff's December 2023 internal discrimination complaint; the pattern of escalating adverse treatment following her return from medical leave; and the pretextual nature of the stated reasons for her termination.

81. Stryker's retaliatory actions toward Ms. Hoff were willful, intentional, and/or made in reckless disregard of Ms. Hoff's rights under the ADA.

82. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and all other damages to be discovered through the course of litigation.

## COUNT IV - VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (Interference and Retaliation)

83. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

84. The Family and Medical Leave Act ("FMLA") entitles eligible employees of covered employers to take leave for their own serious health conditions, and prohibits employers from interfering with, restraining, or denying the exercise of rights under the FMLA, and from retaliating against employees who exercise or attempt to exercise those rights.

85. At all times material herein, Stryker was a covered employer under the FMLA, employing more than 50 employees.

86. Ms. Hoff was an eligible employee under the FMLA and was entitled to take FMLA leave for her serious health condition arising from her January 2023 medical emergency and resulting disability.

87. Ms. Hoff exercised her FMLA rights by taking FMLA leave for 12 weeks from approximately February 2, 2023, through May 4, 2023, all of which was approved by Stryker. Ms. Hoff was then approved for Short-Term Disability until her return in August of 2024.

88. Following Ms. Hoff's return from FMLA leave, Stryker denied her accommodation requests, reduced her job duties and responsibilities, assigned her physically incompatible duties, manufactured a pretextual basis for discipline, and ultimately terminated her employment on March 1, 2024.

89. Stryker's adverse treatment of Ms. Hoff following her return from FMLA leave constitutes interference with Ms. Hoff's FMLA rights and/or retaliation against Ms. Hoff for exercising those rights.

90. Stryker's actions were willful, intentional, and/or made in reckless disregard of Ms. Hoff's rights under the FMLA.

91. As a direct and proximate result of Defendant's interference and retaliation, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, loss of earning capacity, liquidated damages, and all other damages to be discovered through the course of litigation.

## COUNT V - VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Failure to Accommodate and Disability Discrimination)

92. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

93. The Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") prohibits covered employers from discriminating against qualified individuals with disabilities in the terms, conditions, and privileges of employment, and requires covered employers to accommodate the reasonable needs of an employee with a disability.

94. At all times material herein, Stryker was a covered employer under the PWDCRA.

95. At all times material herein, Ms. Hoff was a person with a disability within the meaning of the PWDCRA, in that she suffers from an ileostomy, Crohn's disease, and related conditions arising from her January 2023 medical emergency, which substantially limit one or more major life activities.

96. Ms. Hoff was a qualified individual who was capable of performing her job duties as Lead Meeting and Event Specialist with or without reasonable accommodation, as evidenced by her top company-wide performance review rating and her maximum merit increase.

97. Stryker was aware of Ms. Hoff's disability at all times following her January 2023 medical emergency and resulting permanent conditions.

98. Ms. Hoff requested reasonable accommodations for her disability, including no lifting over 20lbs. for the first three months upon return, the ability to work from home as needed for acute medical flare-ups, an office with a door, frequent bathroom breaks, a flexible schedule, and a speaking limitation for the first 60 days of her return to work.

99. Stryker denied all of Ms. Hoff's accommodation requests without engaging in a good-faith interactive process, mischaracterizing her work-from-home request as needed for acute medical flare-ups as a request for a permanent remote position.

100. Stryker's denial of reasonable accommodations and its subsequent termination of Ms. Hoff's employment based on a pretextual reason constitute violations of the PWDCRA.

101. Stryker's discriminatory actions toward Ms. Hoff were willful, intentional, and/or made in reckless disregard of Ms. Hoff's rights under the PWDCRA.

102. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, exemplary damages, and all other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter a judgment against Defendant in such an amount as the trier of fact shall deem fair and just, together with interest, costs, attorney fees, and for such other and further relief as this Honorable Court may deem appropriate in equity, fairness, and good conscience.

Respectfully submitted,

*/s/ Nichole Omilion*
Nichole Omilion (P86380)
**MARKO LAW, PLLC**
220 W Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: nichole@markolaw.com

Dated: June 15, 2025

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **June 15, 2026**, via:

☐ U.S. Mail                  ☐ Fax
☐ Hand Delivered             ☐ Overnight Carrier
☐ Certified Mail             ☐ Other: Mi-FILE Truefiling
☐ ECF System                 ☐ Email

*/s/ Ariel Laster*

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MICHIGAN**

KATHERINE HOFF,

Plaintiff,                                                                    Case No.

v.                                                                                Hon.

STRYKER CORPORATION,

Defendant.

_____

NICHOLE OMILION (P86380)
JONATHAN R. MARKO (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
nichole@markolaw.com

_____

<u>**DEMAND FOR TRIAL BY JURY**</u>

NOW COMES the above-named Plaintiff, KATHERINE HOFF, by and through her

attorneys, MARKO LAW, PLLC, and hereby demand a trial by jury in the above-captioned matter.

**MARKO LAW, PLLC**

*/s/ Nichole Omilion*
Nichole Omilion (P86380)
*Attorney for Plaintiff*
220 W. Congress, 4th Fl.
Detroit, MI 48226
P: (313) 466-2785/
F: (313) 771-5785

Date: June 15, 2026